IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VICTOR ELVIN LOPEZ,<br><br>Defendant. | CR 18-120-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Defendant Victor Elvin Lopez ("Lopez") is charged with conspiracy to possess with intent to distribute methamphetamine, and possession with intent to distribute methamphetamine.  (Doc. 1.)  He has filed two Motions to Suppress Evidence under the Fourth Amendment.  (Docs. 18, 33.)  U.S. District Judge Susan P. Watters referred the motions to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 59(a), Fed. R. Crim. P., to conduct a hearing and issue appropriate findings and recommendations.  (Doc. 22, 35.)

Lopez was the driver of a vehicle that was stopped and searched by law enforcement on two separate occasions – on January 12, 2018 in Carbon County, Montana, and on June 9, 2018 in Powell, Wyoming.  He asserts that all evidence obtained from the searches should be suppressed.  Lopez contends the search of his vehicle in Montana was unlawful because: (1) his detention from a traffic stop was

1

impermissibly prolonged to enable a dog sniff of his vehicle; (2) law enforcement did not have probable cause to search the vehicle without a warrant; and (3) law enforcement did not have probable cause to search the safe in the trunk of the vehicle without a warrant.  Likewise, Lopez asserts the search of his vehicle in Wyoming was unlawful because: (1) his arrest for DUI was not supported by probable cause; (2) there was no probable cause to search his vehicle; and (3) the search was not a valid search incident to arrest.

The Court held an evidentiary hearing on November 14, 2019, and the parties presented evidence on the motions.  The parties filed supplemental briefing on November 22, 2019.  Having considered the parties' arguments and submissions, the Court **RECOMMENDS** that both of Lopez's Motions to Suppress (Docs. 18, 33) be **DENIED**.

## I.     BACKGROUND

The Court heard testimony from Carbon County Sheriff Deputy Chad Glick and Powell City Police Officer Chad Miner.  The following facts are taken from the hearing testimony and the parties' briefs.[1]

*/ / /*

---

[1] At the hearing, the Court admitted Government's Exhibit 1, which is a dashboard video of the January 12, 2018 traffic stop, and Government's Exhibit 2, which is a body camera video of the June 8, 2019 traffic stop.  (Tr. 9-10, 28.)  The Exhibits are filed under Docs. 30 and 40, respectively, in the Court docket.

### A. Carbon County, Montana Search

On January 12, 2018, at approximately midnight, Deputy Glick observed Lopez's vehicle as it traveled south on Highway 310 in Carbon County, Montana. Carbon County Deputy Gordon Sirrine was also in the patrol car with Deputy Glick. Deputy Glick testified that when he initially saw Lopez's vehicle, it appeared to be speeding. Therefore, he decided to follow the vehicle and observed it travelling at varying rates of speed and weaving. The vehicle drove on the fog line and then toward the centerline several times. As a result, Deputy Glick initiated a traffic stop.

As Deputy Glick walked up to the vehicle, he saw an open 12 pack of Busch brand beer on the rear driver's side floor board, and what appeared to be an empty beer can on the rear passenger floor board. Lopez told Deputy Glick he had been staying in Billings the prior couple of days and was on his way home to Powell, Wyoming. Deputy Glick did not see any luggage or overnight bag that would indicate a trip away from home.

Deputy Glick observed that Lopez's eyes were very bloodshot and glassy, although his speech was fairly clear. Deputy Glick did not detect the smell of alcohol. But Lopez's pupils did not react to light as Deputy Glick passed the beam of his flashlight over Lopez's face several times; his pupils remained constricted

and did not dilate.  At that point, Deputy Glick believed Lopez was under the influence of alcohol and/or drugs.

Deputy Glick also noticed numerous air fresheners in the air vents of the vehicle, and Deputy Sirrine observed a substantial "wad" of cash on the front passenger seat, which he estimated as a few thousand dollars.  When Deputy Glick returned to his patrol car to initiate a check on Lopez's driver's license and vehicle, he recalled he had received information from Wyoming law enforcement a few months prior that Lopez was suspected of trafficking controlled substances.

After completing the records check, Deputy Glick asked Lopez if he had consumed any alcohol.  Lopez confirmed he had been drinking, but could not recall how much.  Deputy Glick asked Lopez to step out of the car to perform field sobriety tests.  As he did so, Deputy Glick noticed that Lopez was chewing tobacco, and asked him to spit it out.  Deputy Glick testified that substances such as chewing tobacco, gum or food may distort the alcohol reading on a portable breathalyzer test (PBT).  Therefore, a standard 20-minute deprivation period is required from the time the suspect's mouth is cleared until the PBT is administered.

Deputy Glick then took Lopez through standard field sobriety tests; Lopez failed the tests.  He also requested Lopez take a PBT, and Lopez agreed.  Deputy Glick explained to Lopez that they had to wait 20 minutes to conduct the PBT

4

because Lopez had been chewing tobacco.  Deputy Glick had Lopez sit in the patrol car while they waited for the deprivation period to expire.  During this time, Deputy Glick called for an additional officer to respond to the scene to secure Lopez's vehicle.  Deputy Glick also requested the assistance of Stillwater County Deputy Cactus Anderson to deploy his drug detection K-9 on the vehicle.

Approximately 20 minutes and 30 seconds after Lopez had spit out his chewing tobacco, Deputy Glick administered the PBT.  Lopez provided a breath sample of .000% BAC.  Based on the negative PBT result, the fact Lopez had nevertheless failed the field sobriety tests, and his constricted, fixed pupils, Deputy Glick placed Lopez under arrest for driving while under the influence of drugs. Deputy Glick advised Lopez he would be taken to Red Lodge, Montana for a blood draw.  Lopez was detained in the back of the patrol car while the deputies waited for another officer to arrive to secure Lopez's car.

Approximately 23 minutes later, Deputy Ben Mahoney arrived at the scene. Deputy Glick then left with Lopez to take him to Red Lodge.  After they left, Deputy Anderson and his K-9 arrived at the scene and conducted a sniff of the vehicle.  The K-9 alerted on the front passenger door next to the front quarter panel.  Deputy Mahoney also noted that he observed a syringe cap on the floor board of Lopez's vehicle, which he knew to be consistent with IV drug use. Lopez's vehicle was then secured in anticipation of a search warrant.

Deputy Glick applied for a state search warrant to search the vehicle.  Justice of the Peace L. Kevin Nichols signed the warrant, which authorized the search of "any items used to store, transport, conceal, weigh or ingest controlled substances." The warrant was executed and a gray Sentry safe was located in the trunk. Methamphetamine, plastic baggies with methamphetamine residue, and heroin were found inside the safe.

**B. Powell, Wyoming Search**

Six months later, on June 8, 2018, Deputy Glick contacted Officer Miner of the Powell, Wyoming Police Department.  Deputy Glick informed Officer Miner that Lopez had an active warrant for his arrest in Carbon County, Montana. Officer Miner was aware that Deputy Glick had arrested Lopez for possession of methamphetamine in Montana.  Officer Miner testified that he was familiar with Lopez and had also arrested him on one prior occasion for a misdemeanor involving methamphetamine.  Additionally, Officer Miner had received information from Wyoming's state drug task force that Lopez was involvement in the sales of narcotics.

The next day, on June 9, 2018, Officer Miner was on an unrelated call at a motel across the street from Lopez's residence.  He saw Lopez's car leave and decided to follow him.  As he did so, Officer Miner asked dispatch to confirm the

6

warrant.  Lopez pulled into a gas station, and Officer Miner activated his overhead lights and stopped him.

When Officer Miner made contact with Lopez, he noticed an open Busch Light beer can in the center console.  He asked Lopez if he had been drinking, and Lopez said yes, that he had two drinks.  Officer Minor informed Lopez that there was a warrant for his arrest, and Lopez responded "yep."  Officer Miner observed that Lopez appeared nervous, would not maintain eye contact, his speech was fast, and he was continually blinking his eyes.  At Officer Minor's request, Lopez then moved his vehicle to a parking space away from the fuel island.  Lopez got out of his car and approached Officer Miner.  At that time, Officer Bradley arrived in a separate patrol car.

Officer Miner had Lopez perform field sobriety tests, which he failed. Officer Miner then administered a PBT, and Lopez provided a breath sample that showed .000% BAC.  At that point, Officer Miner believed Lopez was under the influence of some kind of drug.  Officer Miner placed Lopez under arrest for driving under the influence of a controlled substance.

After placing Lopez under arrest, Officer Miner searched Lopez's person and found $1,300 cash in his wallet.  Lopez stated he received the money from mowing lawns.  Lopez was then placed in the rear of Officer Bradley's patrol car.

After securing Lopez, Officer Miner and Officer Bradley searched Lopez's vehicle.  Officer Bradley found a locked safe in the rear hatchback area of the vehicle.  The safe was placed on the ground outside the vehicle.  Officer Miner then deployed his narcotics detection K-9 Niko to sniff the vehicle.  Niko scanned the vehicle and entered it through the open driver's door.  Niko went to the back seat and tried to sit.  Officer Miner then had Niko exit the vehicle and sniff the safe.  Niko alerted on the safe.

Officer Miner advised Lopez of his *Miranda* rights, and asked Lopez what was in the safe.  Lopez declined to talk.  Officer Miner then located the key to the safe on Lopez's key ring.  Officer Miner opened the safe and found approximately eight ounces of methamphetamine, two digital scales, $2,490 in cash, and a cell phone.

Lopez seeks suppression of all evidence obtained as a result of the two traffic stops.

## II.    DISCUSSION

### A.    Motion to Suppress Evidence from the Carbon County Stop

Lopez does not contest that Deputy Glick had reasonable suspicion for the initial traffic stop on January 12, 2018.  Lopez argues, however, that his detention was unlawfully prolonged to develop probable cause for the search of his vehicle.  Specifically, Lopez asserts Deputy Glick delayed processing him for DUI so that

his vehicle would remain on the highway long enough for Deputy Anderson to deploy his K-9.

The Fourth Amendment protects persons against unreasonable searches and seizures.  U.S. Const. Amend. IV.  A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  A traffic stop is analogous to a so-called *Terry* stop, and can last only as long as is reasonably necessary to carry out the "mission" of the stop.  *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015).  The "mission" of a traffic stop includes "determining whether to issue a traffic ticket . . . checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  *Id.* at 1615.  *United States v. Bisso*, 2017 WL 5484151, at *5 (E.D. Cal. Nov. 15, 2017 (noting that unlike a stop for only an ordinary traffic violation, an officer can "undertake a more substantive investigation into his suspicion of DUI").  A stop that exceeds the time needed to carry out the mission of the stop violates the Constitution's shield against unreasonable seizures, unless the prolongation is supported by independent reasonable suspicion to justify detaining the individual.  *Id.* at 1615.  Thus, the authority to detain for purposes of a traffic stop ends when "tasks tied to the traffic infraction are – or reasonably should have been – completed."  *Id.* at 1614.

During the course of a traffic stop, law enforcement may use a drug-detection dog to sniff a vehicle.  *Illinois v. Caballes*, 542 U.S. 405 (2005).  Indeed, a canine sniff "does not itself constitute a search so as to implicate Fourth Amendment concerns."  *United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005).  But the officer may not extend the traffic stop to allow a canine sniff, unless the officer has independent reasonable suspicion to justify the prolongation.  *Rodriguez*, 135 S.Ct. at 1616.  In *Rodriguez*, the Supreme Court held that dog sniffs are "not fairly characterized as part of the officer's traffic mission," but are rather a measure aimed at investigating criminal wrongdoing.  *Id.* at 1615.  *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015).  Thus, the Supreme Court stated that "[a] seizure justified *only* by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation."  *Id.* at 1616 (emphasis added).

Here, the Court finds Lopez's detention was not prolonged for purposes of the dog sniff.  In light of Lopez's driving patterns, Deputy Glick stopped Lopez to investigate the possibility that he was driving under the influence.  As part of his investigation, Deputy Glick administered field sobriety tests and a PBT.  These tests were reasonably related to the mission of the stop.  *Bisso*, 2017 WL 5484151, at *5 (holding the officer "could extend the duration of the traffic stop as long as

10

reasonably necessary to conduct an investigation into his suspicion that Defendant was driving under the influence.").

Although there was a delay between the completion of field sobriety tests and the PBT, the delay was required to complete the deprivation period to ensure the accuracy of the PBT.  During the wait, Deputy Glick made the call for K-9 assistance.  Deputy Glick then administered the PBT as soon the deprivation period expired.  Immediately thereafter, Deputy Glick placed Lopez under arrest for DUI. At that point, the traffic stop and temporary detention was terminated.  Lopez was under arrest, and the subsequent wait for Deputy Mahoney to arrive on scene to secure the vehicle was reasonable.  *See e.g. United States v. Hunnicutt*, 135 F.3d 1345, 1350 (10th Cir. 1998) ("[D]etention of the driver at the scene to accomplish a canine sniff is generally reasonable where the driver is already under lawful arrest."); *United States v. Fiala*, 929 F.2d 285, 288 (7th Cir. 1991) (holding that a 1½ hour wait for a canine unit was reasonable because the defendant was already under lawful arrest).  Moreover, Lopez was transported to Red Lodge for processing before Deputy Anderson and his K-9 even arrived on scene.  Therefore, Deputy Glick did not unlawfully prolong Lopez's detention to obtain the dog sniff.

Lopez next argues that law enforcement did not have probable cause to conduct a warrantless search of the vehicle and the safe found inside the trunk.  In this regard, Lopez presents extensive discussion regarding the automobile

exception to the warrant requirement, and points out that law enforcement must have probable cause to search a vehicle, or containers within the vehicle, without a warrant.  Nevertheless, Lopez appears to ignore the fact that the Carbon County search was not a warrantless search.  The search was conducted pursuant to a warrant issued by the Carbon County Justice of the Peace, who was authorized to do so under Montana law.  See Mont. Code Ann. § 46-5-220(2) ("A search warrant may be issued by a . . . justice of the peace within the judge's geographical jurisdiction").  That being the case, Lopez must either show that the warrant was invalid under the Fourth Amendment, or that the warrant was executed in a manner that rendered the search unreasonable.  *U.S. v. Artis*, 919 F.3d 1123, 1128 (9th Cir. 2019).

Lopez presents no argument that the warrant was invalid.  He does reference Fed. R. Crim. P. 41 in his brief, which governs the issuance of warrants in federal proceedings.  But Rule 41 does "not apply to a search conducted by state officials pursuant to a state warrant merely because the evidence seized is used in a federal prosecution."  *U.S. v. Martinez-Garcia*, 397 F.3d 1205, 1213 (9th Cir. 2005).  Rule 41 "applies to a search conducted by state officers pursuant to a state warrant only if the search is 'federal in character.'"  *Id.*  That is, "[t]he search must be tied to an investigation into potential violations of federal law."  *Artis*, 919 F.3d at 1130.  "Generally, a search is federal if from the beginning it was assumed a federal

prosecution would result." *United States v. Palmer*, 3 F.3d 300, 303 (9th Cir. 1993). That is not the case here. No federal officers were involved in the investigation or the search, and the warrant was sought to search for evidence of the violation of state laws. (Doc. 28 at ¶ 3.) Moreover, even if the warrant was improperly issued, Lopez presents no argument why the *Leon* good faith exception to the exclusionary rule would not apply. *United States v. Leon,* 468 U.S. 897 (1984)

Lopez also does not present any argument that the warrant was improperly executed. Lopez does assert that probable cause was lacking to search the trunk of the vehicle and the safe found therein. Lopez argues that the dog alerted to the passenger compartment of the vehicle, not the trunk area. Therefore, Lopez argues, there was no probable cause to search the trunk or safe without a warrant. But again, a search warrant authorizing a search of the vehicle had been issued. To the extent Lopez argues the search of the trunk and safe exceeded the scope of the warrant, he is incorrect. The warrant did not limit the search to the passenger compartment of the vehicle. Rather, the warrant specifically authorized the search of "any items used to store, transport, conceal, weigh or ingest controlled substances." Both the trunk and the safe were areas where such items could reasonably be found. Lopez has not cited any authority holding that the scope of a vehicle search conducted pursuant to a warrant is limited solely to the part of the

13

car where a narcotics canine alerted, and the Court declines to impose such a restriction here.

Accordingly, the Court finds Lopez's Fourth Amendment rights were not violated as a result of the January 12, 2018 stop in Carbon County, Montana. The Court therefore recommends that Lopez's First Motion to Suppress be denied.

**B.     Motion to Suppress Evidence from the June 9, 2018 Stop**

Lopez argues his arrest for DUI on June 9, 2018 in Powell, Wyoming was not supported by probable cause. Lopez also contends law enforcement did not have probable cause to search his vehicle or the safe under the automobile exception to the warrant requirement, and further asserts the search was not a valid search incident to arrest.

As an initial matter, the Court finds Lopez's arrest was supported by probable cause. "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."

14

*United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  Probable cause is a fluid concept that turns on the assessment of probabilities in a particular factual context.  *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Id.* at 243, n.13.

After Officer Miner stopped Lopez, he saw an open beer can in the center console, and Lopez admitted to drinking.  Officer Miner also observed that Lopez was nervous, did not hold eye contact, was talking fast, and was continually blinking his eyes.  Moreover, Officer Miner administered field sobriety tests, which Lopez failed, demonstrating his impairment.  Lopez provided a breath sample that showed .000% BAC, thus ruling out alcohol as the cause of his impairment.  Taken together, Officer Miner's observations of Lopez were sufficient to lead a reasonable person to conclude that Lopez was driving while under the influence of a controlled substance.  Accordingly, Officer Miner had probable cause to arrest Lopez for DUI-Controlled Substance.

The Court will next consider the lawfulness of Officer Miner's warrantless search of Lopez's vehicle.  At the hearing, Officer Miner testified that he had no reason to suspect there was evidence of controlled substances in Lopez's vehicle.  Rather, he said he searched the vehicle based solely on the fact that Lopez had been arrested for DUI.  Thus, the search is not valid under the automobile

exception to the warrant requirement, which requires that police have probable cause to believe the vehicle contains contraband. *Carroll v. United States,* 267 U.S. 132 (1925). Therefore, the search must be justified under the search incident to arrest exception to the warrant requirement.

Searches conducted without a warrant are *per se* unreasonable under the Fourth Amendment, subject to a few well-established exceptions, including the search incident to arrest exception. *Katz v. United States*, 389 U.S. 347, 357 (1967). In *Arizona v. Gant*, 556 U.S. 332, 343 (2009), the Supreme Court held police may search a vehicle incident to the arrest of an occupant in two circumstances: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"; or (2) "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" The scope of a search incident to arrest includes containers found within the passenger compartment of a vehicle. *New York v. Belton*, 453 U.S. 454, 460 (1981); *Gant*, 556 U.S. at 344. Generally, the hatchback area of a vehicle "meets the criterion for automobile searches under *Belton*; it is generally, even if not inevitably, accessible to an arrestee from the passenger area of the vehicle." *United States v. Mayo*, 394 F.3d 1271, 1277 (9th Cir. 2005).

16

Lopez was handcuffed and secured in the back of Officer Bradley's patrol car at the time the officers searched his vehicle. The search therefore cannot be upheld under *Gant*'s first prong. Accordingly, the issue before the Court is whether the search should be upheld under *Gant*'s second "reasonable belief" prong.

The Supreme Court has provided little guidance as to what the phrase "reasonable to believe" means as it is used in *Gant*, or when it would be considered reasonable for law enforcement to believe that a vehicle contains evidence of the crime for which the occupant was arrested. The Court stated that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. [Citations omitted]. But in others, including *Belton* and *Thornton*,[2] the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, 556 U.S. at 343-44.

Here, Lopez was arrested for DUI-Controlled Substance. The question thus becomes whether law enforcement had authority to search his vehicle based solely on the fact of the DUI arrest. Courts have generally adopted two approaches to this question. Some courts have concluded *Gant* approves a categorical rule that

---

[2] The defendants in *New York v. Belton*, 453 U.S. 454 (1981) and *Thornton v. United States*, 541 U.S. 615 (2004) were arrested for drug offenses.

looks solely to the nature of the offense of arrest.  Those courts reason that if the

offense of arrest is one that might yield physical evidence, it is *per se* reasonable

for law enforcement to believe evidence relevant to the crime might be found in

the vehicle.  *See e.g. Brown v. Florida*, 24 So.3d 671, 677 (Fla. Dist. Ct. App.

2009) (holding "the 'nature of the charge' is determinative of whether there exists

a reasonable basis to search for evidence, not whether there is some independent

evidence that gives rise to a belief that the particular vehicle contains evidence.");

*Idaho v. Cantrell*, 233 P.3d 178, 184 (Idaho Ct. App. 2010) (rejecting the

defendant's argument that officers must possess some additional information

beyond the nature of the offense to search under *Gant*; stating "[r]ather, 'the

offense of arrest will supply a basis' for the search."); *United States v. Page*, 679

F.Supp.2d 648, 654 (E.D. Va. 2009) (holding that under the rationale of *Gant*, the

defendant's arrest for possession of marijuana, "standing alone, justified the search

of the passenger compartment of his vehicle."); *People v. Nottoli*, 199 Cal. App.

4th 531, 553 (Cal. Ct. App. 2011) (stating "nothing in *Gant* suggests that the

Supreme Court was adopting a fact-intensive test similar to the reasonable

suspicion standard established by *Terry v. Ohio,*" but rather "*Gant* indicated that

the nature of the crime of arrest was determinative.").

    Other courts have required some degree of articulable suspicion that

evidence might be found in the vehicle based on the particular circumstances

surrounding the arrest.  Those courts have generally found that the 'reasonable belief' standard under *Gant* is analogous to the reasonable suspicion standard applied under *Terry v. Ohio*, 392 U.S. 1 (1968).  *See e.g. United States v. Reagan*, 713 F.Supp.2d 724, 728, n.2, 733 (E.D. Tenn. 2010) (finding "*Gant* does not create a *per se* rule that a search of a vehicle passenger compartment incident to arrest is always permissible when the offense of arrest is of one type, and never permissible when the offense is of another type" and holding that after a DUI arrest, police may only search the vehicle under the second prong of *Gant* "when there is a particularized and articulable reason to believe that evidence of DUI is contained inside."); *United States v. Taylor*, 49 A.3d 818, 824 (D.C. 2012) (holding that "officers must have reasonable, articulable suspicion to conduct a vehicle search under the second prong of *Gant*."); *People v. Chamberlain*, 229 P.3d 1054, 1057 (Colo. 2010) (explaining *Gant*'s use of phrases like "reasonable to believe" and "reasonable basis to believe" indicate the Court intended "some degree of articulable suspicion"); *People v. Evans*, 200 Cal.App.4th 735, (Cal. Ct. App. 2011) (rejecting the categorical approach and concluding "a reasonable belief to search for evidence of the offense of arrest exists when the nature of the offense, considered in conjunction with the particular facts of the case, gives rise to a degree of suspicion commensurate with that sufficient for limited intrusions such as investigatory stops.").

19

The latter line of cases appears to provide the better reasoned approach, but the Court need not make that determination here.  Under either approach, the search here was lawful.  Under the categorical approach, the search was lawful because the DUI arrest, by itself, established a reasonable belief that Lopez's vehicle might contain narcotics evidence relevant to the crime of arrest.  *See e.g. Cantrell*, 233 P.3d at 185 ("Cantrell was arrested for DUI, and the DUI supplied the basis for the search."); *Nottoli*, 199 Cal. App. 4th  at 553 ("Reid's arrest for 'being under the influence of a controlled substance' supplied a reasonable basis for believing that evidence 'relevant' to that type of offense might be in his vehicle."); *United States v. Valandra*, 2011 WL 3439930 (D. S.D. June 9, 2011) (holding the defendant's arrest for DUI "also gave [the officer] a reasonable basis to believe that additional evidence relevant to [the defendant's] intoxication – such as alcoholic beverage container – might be found in the vehicle.").  But even under the articulable suspicion approach, the Court finds there is evidence from which law enforcement could have reasonably believed narcotics might be found Lopez's vehicle.

The Ninth Circuit has indicated that the search incident to arrest exception under *Gant* "appears to require a level of suspicion less than probable cause."  *U.S. v. Rodgers*, 656 F.3d 1023, 1028, n.5 (9th Cir. 2011).  This certainly makes sense; otherwise, *Gant*'s search incident to arrest exception would merely duplicate the

automobile exception.[3]  Other courts agree that "reasonable to believe" suggests a less demanding standard than probable cause.  *See United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) ("Presumably, the 'reasonable to believe' standard requires less than probable cause[.]"); *United States v. Donahue*, 764 F.3d 293, 299, n.6 (3d Cir. 2014) (noting the *Gant* incident-to-arrest exception "requires a lesser basis for a search than a showing of probable cause"); *United States v. Polanco*, 634 F.3d 39, 42-43 (1st Cir. 2011) ("[T]he auto exception requires probable cause.  But the *Gant* evidentiary justification only requires a 'reasonable basis.'").  Thus, under this line of authority the 'reasonable belief' standard of *Gant* is akin to the "reasonable suspicion" standard required to justify a stop under *Terry*.  *See People v. Coates*, 266 P.3d 397, 399 (Colo. 2011) (interpreting the 'reasonable belief' standard "as reflecting a degree of suspicion commensurate with that sufficient for limited intrusions like investigatory stops").

Reasonable suspicion exists when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.  "The reasonable suspicion standard is not a particularly high threshold to reach."  *United States v. Valdes-Vega*, 738 F.3d

---

[3] Under the automobile exception, "police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime."  *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010).

1074, 1078 (9th Cir. 2013).  Reasonable suspicion must be more than a mere hunch, but "the likelihood of criminal activity need not rise to the level required for probable cause, and falls considerably short of satisfying a preponderance of the evidence standard."  *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

Here, the Government argues that although Officer Miner testified he conducted the search of Lopez's vehicle solely based on the fact of Lopez's DUI arrest, the record reveals there is evidence supporting reasonable suspicion that drugs were in the car.  The Court agrees.

The standard for determining whether reasonable suspicion exists is an objective one.  *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016).  Reasonable suspicion does not turn on the officer's subjective beliefs, but "the facts justifying the stop must be known to officer[] at the time of the stop." *Id.*  Thus, the officer's subjective beliefs regarding whether the facts constitute reasonable suspicion does not control.  Rather, the Court makes the determination based on an objective assessment of the facts within the officer's knowledge.  *See e.g. United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004) ("Because reasonable suspicion is an objective test, we examine the facts within the knowledge of [the officer] to determine the presence or nonexistence of reasonable suspicion; we do not examine the subjective beliefs of [the officer] to determine whether he thought that the facts constituted reasonable suspicion."); *United States*

*v. Jones*, 990 F.2d 405, 408 (8th Cir. 1993) ("Because we decide whether reasonable suspicion justifies a detention based on all the objective facts, we are not limited by the detaining officer's subjective opinions.").

Based on Lopez's conduct, and the results of the field sobriety tests and the PBT, there was probable cause to believe he was intoxicated on a controlled substance. In addition, there was objective evidence known to Officer Miner that would support a reasonable belief that drugs might be present in the vehicle. Evidence of drugs or drug paraphernalia would be relevant to the crime for which Lopez was arrested. Officer Miner testified that he knew Lopez, and had personally arrested him on a methamphetamine-related charge in the past. Officer Miner also testified that he knew drugs had been found in a safe in Lopez's vehicle when Lopez was previously arrested for driving under the influence of a controlled substance in Montana. Although law enforcement cannot rely on past criminal history alone to find reasonable suspicion, it can be considered as part of the totality of the circumstances. *See Burrell v. McIlroy*, 464 F.3d 853, 858, n.3 (9th Cir. 2006). Officer Miner was also aware that law enforcement had information indicating Lopez was involved in transporting narcotics. Then, when Lopez was searched incident to his arrest, he was found to be in possession of $1,300 in cash without a credible explanation where the money came from.

23

Accordingly, based on an objective assessment of the facts, the Court finds there was sufficient evidence to support the reasonable belief that evidence of the crime of arrest might be found in the vehicle. The search was therefore a valid search incident to arrest under *Gant*'s second prong. The Court therefore recommends that Lopez's Second Motion to Suppress be denied.

### III.   CONCLUSION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.     Lopez's First Motion to Suppress (Doc. 18) be **DENIED**, and

2.     Lopez's Second Motion to Suppress (Doc. 33) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 18th day of December, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

24